I would please the Court, David Rosenfeld, on behalf of the appellant, Painters District Council 15, I would like to reserve three minutes for rebuttal. The provision of the contract which is in dispute has an especially broad arbitration provision. Any disputes arising under this section are to be submitted to arbitration. No limitation, any disputes. So I'd like to just sort of brush aside or briefly deal with a number of issues. Well, let me ask you that since you say that. You know, I think we're probably familiar with, you know, sort of the specifics of what. But I'm curious, if you believe that you were entitled to arbitrate, why did you file charges with the NLRB rather than immediately moving to compel arbitration in the district court? Because it was a choice of form at that time because the board felt that the employer had repudiated that provision of the contract, and it seemed like an appropriate remedy to do so at that time. Well, can I make the other inference that possibly you thought it was more representational when you filed with the NLRB, but then you lost, so then let's go to the district court? No, because there's nothing that suggests that we thought it was anything other than a contractual dispute. And, in fact, when the region issued complaint and when the case was tried, all parties addressed it as a contractual dispute, and that is whether the employer was obligated to respect the third party's decision as to majority status under Section 9A. And so the parties treated it that way. And, in fact, as I point out in my brief, after the ALJ issued her decision, when it was appealed to the board and exceptions were filed, in both cases the Respondents have said that it was properly a matter to be resolved by the arbitrator. FSI says, purported contractual disputes. The judge was correct in finding that the union should have filed grievances instead of running to the board. Purported contractual issues concerning duties under the now-expired Article IV do nothing to enhance the union's fundamental and flawed claim Section 8 represents Section 9A status. And the other Respondents make the same point. Disputes over such things as comparison of signatures and compliance and so on are all arbitral, both at 138 and 142. So it was an alternative process, but the bottom line was that everyone thought it was a matter of whether the contract had been complied with. Well, I think your best argument is the broad arbitration clause. But then isn't there another section in there that has a carve-out? Is it 22? Yes. There's a provision that says that matters affecting a new agreement are not subject to this. And there are two easy answers to that. A on its face is talking about what we call interest arbitration, meaning you don't submit to arbitration the terms of a new contract. But let me give some credit to the appellees and say maybe you can construe it that way. This Court has been very clear that if there's an asserted carve-out, what we call exception, whether that exception applies is a matter for the arbitrator to determine when you have all disputes. There's an old Ninth Circuit case called Desert Coca-Cola, which I've argued before this case in that whole principle a number of times, that makes it clear that if there's a purported or argued exception, whether it applies in particular cases for the arbitrator to decide. Well, it's a tough case, and but, you know, sometimes, you know, you try to go back and sort of reduce things to what the core dispute here is. And there's a difference between being a 9A and an 8F, right? And that's really at the core of this. And obviously, unions would prefer to be a 9A representative as opposed to an 8F. And this is what is the underlying activity that's going on. Isn't that a core representational issue? Well, I think St. Vincent teaches us that, in fact, right now, it's not a representational issue, because St. Vincent says when the court is making the determination whether to compel arbitration, that's the only issue. All the court does is look to see whether the any disputes language is broad enough to encompass the dispute at hand. And if so, by ordering arbitration, the court is not reaching any representational dispute, even touching it. And St. Vincent is very clear that you look at that preliminarily, because, just to quote St. Vincent, Rather, the district court in the present case would merely be required to determine whether the arbitration clause in the agreement is susceptible of an interpretation that covers the asserted dispute. Compelling arbitration of the alleged contractual violations will not require the naming of an exclusive bargaining representative or a collective bargaining unit. And so, in this case, the court is not going to be able to determine a collective bargaining unit. Well, now, in this case, there seems to be that the card check didn't comply with the Daniels-Steining case eligibility formula, which I know is very familiar to both of you that deal with this on a regular basis, but I had to spend a little more time on that. Isn't that a representational issue? No, it's a contractual issue here for several reasons. First of all, St. Vincent says that's a matter for the arbitrator to resolve. We think the parties resolved it because the contract says that the third party and I can just add parenthetically here, they make this big point that the third parties that did the card check weren't neutral. Nothing in this agreement says they have to be neutral. It designates third parties. But I'll give them credit. They could make the argument before an arbitrator that at least the third party had to be somewhat neutral. Well, Mr. Rosenthal, let me ask you this, because you've been around a long time. It's been a while, but it's been a long time since I was involved in labor relations. In reading St. Vincent's, the distinction appears to be the difference between a contractual dispute and a representational dispute. And I guess in that case, the – there was a very specific series of provisions that related to organizing the drives. Organizing the drives. And here, the provision that we're talking about that you want to send to arbitration is exclusively concerned with the question of whether or not there is majority status. So that seems to be something that tilts this over into the – or the representational field. Is my distinction simply – I don't know if I'm being clear about the distinction. You're being perfectly clear. And the answer is severalfold. First of all, at the time this dispute arose, there was no dispute but that the union represented the employees. The only dispute was whether you characterized it under 9a or 8f. Right. Number two, Marriott, I think, conclusively answers that question because in the Marriott case, you had exactly that problem of whether you could enforce a card check provision that would apply a contract to a wholly new group of people. Remember, this is the downtown Marriott, not far from us, which was open, totally nonunion, and the union said, look, Marriott, you agreed to a card check procedure by which we could gain representative status. And the Ninth Circuit said that agreement between the parties was enforceable, even though it certainly ultimately would lead to union representation. And in the St. Vincent case, it's, again, a little bit different because there the union wasn't seeking to represent the people. Right. It lost that issue. It was seeking some other remedy. But the Marriott answers that case – answers that, I think, conclusively. And I've cited other cases in my brief where courts have enforced exactly these kinds of provisions where unions can gain representation status at wholly new units. And the comment about having been around a long time, if you go back to where this doctrine came from, it comes in part from a case called California Consolidators, which I lost in this Court 30 years ago, which – But who's counting and who remembers, right? I never forget a case. And then you come to this Valley Engineers case that the athletes rely on so much. And, Your Honor, that's a case where there was Valley Engineers, which was union. Vulcan Engineering was nonunion. And the union sought to enforce the contract upon Vulcan Engineering employees who were plainly different and nonunion. And the courts said, wait, that is a clear representational issue. And go back a few years earlier to that, to Ketchikan-Pulp, that was the same problem. But Ketchikan-Pulp is before Marriott. It's before St. Vincent's. And the courts have now been very clear that you can enforce an agreement among the parties, even though it has representational overtones, through the arbitration procedure. What if the arbitration provision said all issues in dispute, including representational matters, will be arbitrated? I think that's an agreement to do so, because what this Court said in Marshall Hale Memorial Hospital, again, another one of my cases, is that deciding that the argument is premature. Let me give you an example in this case. We could go back before the arbitrator. And the arbitrator would say, you know, union, you didn't do this right. You didn't have either appropriate signatures, or maybe this tiny Daniel formula in some respect should have been applied, or maybe the neutral that you selected wasn't neutral enough. And fine, that we didn't violate the contract, that we're not entitled to our 9A status based on the method we chose. The arbitrator, as a remedy, could say, you know what, I have the power to determine that issue, and then say, and do his own or her own calculation or determination, did we have majority status. So it's premature to speculate at this time. And that's what Marshall Hale's lawyer said. But since you have been around so long, I have one more question that I want to ask you, and then I'll let you get back to what you said. Because I mean, if, let's just say we were to, hypothetically, agree with you and send it back, you know, reverse the district court and say that it should go to arbitration. If the arbitrator and the NRB, because we've got this other thing going on in the NRLB, if they're different, then what happens? Well, I concede that you have to go back to court again and say which one controls or what happens. I have no doubt which one controls. If the labor board issues a decision that's contrary to the arbitrator, I think the law is clear that the board's decision would prevail over a contrary arbitration decision. The problem I think we have here is that there's some dispute between the parties about what the ALJ did. Our view is, she said, Union, you were wrong. You should have grieved this matter, and therefore she dismisses the complaint on the R theory. We think that she told us you should have grieved the employer's failure to comply. Our position is no, procedurally, they should have grieved it. We have a dispute over procedure eminently resolvable by an arbitrator. And I'll remind you, so I think that I concede, should the board reverse the ALJ and say, no, Section 9A status, you're dead wrong, we lose. If the board sits on it, which is what they're likely to do for years, and that's kind of the problem we're facing, that since January 1, 2008, we've not had a functioning labor board. We've had two members, as you know, and you've got a case tomorrow on this problem. And this is a difficult enough case that we're not likely to see a decision until we get a new board seated sometime in the future. Well, you know, that might be occasion to write a letter to the to Washington, but I'm not sure we can jettison our law because of that dysfunctional board. It only deals with the question of, yes, we agree at some point in the future, should there be a contrary decision, that would take precedence. But you're saying that that's not likely to happen. It hasn't happened. You have three minutes left if you want to observe it. Thank you. Morning. May it please the court, I am Thomas Lenz. I am counsel for Flooring Solutions of Nevada. I would like to use half of my time and reserve the rest for Attorney Gregory Smith, who's representing the other respondents. This is- So do we throw you off the podium at halftime, or do we wait to look at his face as you're using up his time? My pleasure. This is a representational dispute. At all points in time since the alleged card check involving my client, this has been an issue pending at the National Labor Relations Board. What is very unique about FSI's situation is that the card check was held on two hours' notice on a day they knew FSI was not available, the exact same day they went to the National Labor Relations Board and requested an election. That was what year? That was in 2007. It was January 30th, 2007. But your Article 4 of the agreement, didn't you agree to arbitrate disputes about a card check? If a grievance is filed, that's in Article 22. There's a provision there that says that charges are to be filed in triplicate, and that never happened. And at all points in time, it's been conceded that no grievance was ever filed. So if they had filed a grievance, then this would be, it would fall under the arbitration clause? If a grievance had been filed within a reasonable period of time, it would be something that would arguably be arbitrable. Now what? Arguably or would be? In a reasonable period of time, since there is no set time period in the contract for a grievance, yes, it would be arbitrable. Even though you're arguing that it's representational? Well, here's the thing. Here's the thing. The issue that the petitioner has framed is one of whether they achieved Section 9A status. And it's not alleging a violation of the contract. It's saying, did we achieve Section 9A status under the contract? And that is consistent with the position they articulated at the board that they sought through their election petition. For a determination of 9A status, this court has ruled, I mean, that's a representational issue. So a fundamental aspect of this as well, and I think the Marriott case goes to this point, is that disputes over ground rules, procedures to be followed, are things that are appropriately raised before the NLRB. So the petitioner relies very heavily on the St. Vincent's case. And that is a distinguishable case. That is a case in which there was an agreement on process for the parties to deal with each other in the course of an organizing campaign. And when it was alleged that that agreement had been violated, the union filed a set of charges outlining you violated Article X, Article Y, Article Z. And that was something laying out violations specifically of a contract, and arbitration was appropriately awarded. But let me ask you this. Are you saying that if there had been a grievance filed that said that the card check procedures that we used were in accordance with what the contract provides, and therefore, there was a breach of that provision of the contract when you didn't recognize the result of the card check, that would have been you would have regarded that as something that would have been sent to the grievance procedure? I would really need to see that grievance, because from my perspective, there needs to be a discernible provision of the contract as to which a violation is alleged. But that's the way I tried to allege it. It was in violation of the provision of the contract that deals with the card check. Yes. Some alleged violation of Article IV, perhaps. Perhaps. But what you're saying, are you saying that this, that no such grievance was filed? No such grievance was filed. Now, let me, and second, what is, seems to be at issue here is not the nature of the card check, but whether or not there was majority status? Well, actually, there is, the nature of the card check is also in doubt, because this, for 9A status to be conferred under existing law, NLRB, and the courts, there needs to be an unequivocal demand for majority recognition, and there needs to be a process that the parties have agreed upon, and as was very evident from the union confirmed that they did not follow the Daniel Steine formula, which absolutely disenfranchises employees. The reason the Daniel Steine formula exists under NLRB law is because the construction industry is sporadic, and you may not have someone on the payroll that would normally be eligible to vote, but someone who worked over the scope of the last two years. And what the union admittedly did was they relied upon a very discrete set of employees who were on a trust fund report. And that is not an accurate determination of what a... Well, but we don't really have that, that's not here. It's a ground rule question, and it goes to show that when a union conducts a unilateral card check using a stranger for a purported neutral, and they conducted in manners that we had not agreed to when they knew we were not available, those are ground rule questions under Marriott that are appropriate for the NLRB. I understand that, but I'm just trying to get to the core of what you would say. Because we do have a contract provision here that deals with card checks. Right. And that's the problem, I think. I mean, that's what gives rise to the whole case. So I'm just trying to get an idea of what you think is the core grievance that could have been filed under that provision that would have been properly grievable and gone to court. Core grievance would perhaps be that the employer failed to observe its duties under Article 4 by participating in a card check. But these are duplicative issues. And because FSI has, since January 2007, believed that this dispute is more appropriately resolved through the election process that the union requested on January 30, 2007, we agreed immediately to a vote, which unfortunately has not been held. And when the union chose to walk away from its election petition, we immediately filed our own election petition, which remains pending. So there is a live request at NLRB for a vote of these employees. And as the petitioner has accurately confirmed, an NLRB result trumps what the court does, trumps what an arbitrator does. So it's appropriate for an election to be held, and that's in NLRB's control. It's appropriate for the court to say no arbitration when no grievance has been filed, and we have the same issues essentially pending at the NLRB. And I've... You've used half your time. I have.  Thank you. May it please the Court. I'm Gregory Smith, representing the JNR respondents. I disagree with my co-counsel. If the union is seeking an election or the verification that it achieved majority status recognition under 9A, which it is seeking, I think there's no grievance that could be filed that would make that a non-representational issue. And the Marriott Court, frankly, makes that distinction. The Marriott Court said if it enforced the agreement to do a card check, but when the union asked, well, okay, but make sure the employer cooperates in the card check and gives us the names, addresses, and phone numbers, the Ninth Circuit said, no, we're not going to do that. That is the procedural part of how the card check, how the representation is achieved. And that... Well, how do you reconcile Section 4 and Section 22, then? I think 22 clearly just takes away the representation issue, because that's what future negotiations is all about. At the end of the 8F contract, we had the employers had the right to just walk away. They didn't have to bargain at all. That's what DECLA says. And so the Article 22 makes that clear. That's what it's talking about. But in any event, when Marriott, when the union asked for the additional stuff from Marriott, Marriott said, not only is that not arbitrable, we don't have jurisdiction over that, regardless of whether, and this is critical, regardless of whether you claim that they should cooperate under board policy or if you claim that they have to cooperate under the contract language. This Court said it's not arbitrable in either event. The Marriott Court also explained that while it would let an agreement to arbitrate a bargaining unit issue, as it did in Ketchikan-Pulp, it cited Ketchikan-Pulp, that it would let that go to arbitration. Admittedly, that's more of a representational issue than here, but it cited Ketchikan-Pulp as an example. But they wouldn't enforce the Ketchikan, the agreement at Ketchikan-Pulp because it disenfranchised those employees at the new facilities. The agreement said the contract is going to apply to this and all new facilities. Well, those new facilities don't have employees yet, so they didn't get to vote. Well, can you distinguish the case, this case, from Granite Rock Company versus International Brotherhood of Teamsters? Refresh me on the facts, ma'am. Judge, I don't remember the Granite Rock Company. Well, it's okay if you can't distinguish it. I can't distinguish it. But I think in Marriott, when they talked about Ketchikan-Pulp, they didn't enforce that because it was disenfranchising those employees. But that's exactly what's going on here. The union's position would disenfranchise those who didn't get to vote because of the Daniel Stiney formula, those whose signatures were not verified, and those who were not on the new hires and not on the outdated list the union was using. All of those are disenfranchising features of what happened here. And St. Vincent's doesn't change that result. St. Vincent alleged 18 specific violations of an agreement during the organizational process of the union, not the representation portion itself, not the nuts and bolts of how we achieve recognition. That's all controlled by Stanton Field under board law. And the union's argument about this being they've already been a representative under 8F is false because under DECLAW, the board said an 8F union is not, and I quote, representative of an employer's employees, unquote, as that language is used in the Recognition Picketing Clause of the National Labor Relations Act. The point is, and DECLAW has said, the only right the union has as an 8F representative is to enforce the 8F agreement, but the union acquires, and I quote again, no other rights or privileges of a 9A exclusive representative. That's at page 1387 in DECLAW. There's no presumption of majority for this union either during the contract or after. That union could be kicked out under an NLRB election, a petition filed by the employees, a petition filed by another union, or even by the employer. So that doesn't give them any comfort. Let me ask you the same question I asked opposing counsel. Could there be an agreement that said that all disputes expressly said, including representational matters, will be submitted to arbitration? That's a hard case, but I don't believe that the law permits that. I think the law is that in the Ninth Circuit, I mean, the Ninth Circuit's used that phrase repeatedly recognized that representational issues are not, they don't have jurisdiction over them, they're not arbitrable. All right. The second question I want to ask you is with respect to 4 and 22. Who determines whether 22 trumps 4 in this case? I think the Supreme Court has made clear, and AT&T and other cases, that it's the court to decide what is arbitrable and what is not. The only other point I want to make is I don't want to lose sight, and the JNR respondents have a unique set of facts, too, and that is that their dispute did not arise during the term of the contract. This card check was conducted on the last day of the contract, but the respondents were not told the results of that card check, not until four months later at the NLRB trial. When the union presented those certifications, it became clear then that they had claimed to achieve majority status for only four of those employers, and recall that if any of all those eight employers who were involved in those card checks had said, okay, you're not a representative, four of them would be considered a violation under the Act because the union hadn't achieved majority. It's your position that no matter what they put in the contract with respect to how they are going to determine whether the union has majority status, it's not – it can't be arbitrated? Well, my position is that they didn't put it in in this contract. And even though – and the ALJ said what they should have arbitrated, by the way, was those procedures, you know, the Daniel Stiney formula and all that. But I believe the Court's decision in Marriott would say that, no, that even those are representational issues and shouldn't be subject to arbitration. Okay. I'm not sure we have to go to that part. Thank you. We did file a request for arbitration over there. Maybe it's not a grievance, and that's found at the record at page 143, where I sent a letter to these gentlemen on October 30, 2007, talking about how the ALJ had issued their decision, and although we have challenged that by way of exceptions, we are demanding arbitration over that dispute under the terms of that agreement. And Mr. Lenz is correct that that was 10 months later, and he is correct that that may have been late, but he's also correct that whether it was late, tardy, or we're guilty of laches is something for the arbitrator to resolve, and laches was determined by the Supreme Court in Flair Builders to be a matter for the arbitrator to solve. And Mr. Smith, on behalf of his clients, raises other issues, basically talking about how that there's he talks about the disenfranchisement by Steiney Daniel. Our point is simply that the parties actually agreed to it. They said the union has to establish the majority status of its employees. We say we can do that by getting authorization cards, which we did, and the ALJ find we actually had majority status relying on those authorization cards. And we say the parties specifically understood they wouldn't use Steiney Daniel in part because of the nature of these employers who are floor-covering employers of a steady crew, but that's a matter for the arbitrator to resolve because Signet, which is a case we've cited, says the parties can use it in alternative formula in the construction industry if they choose. So that's just one of these. I don't want to argue the merits of any of this. I just want to emphasize that this is all a dispute within the meaning of the contract. Judge Kagan, you asked about Granite Rock. I'll be embarrassed. There are several Granite Rock cases that have come before this Court. If you're talking about the most recent one, I'm happy to talk about that. Well, I think one, but there was one before the Supreme Court. That's the one that's currently before the Supreme Court where Granite Rock filed a 301 suit against the union claiming a breach of contract, and this Court took the position that its claim had to be arbitrated. It's not a representational dispute. It's a matter of who has the burden of grieving it. But I think, didn't you cite that as a dispute that was arbitrable, I think, in your brief or something? I did in a 28J letter to the Court because it implicates Federal Arbitration Act issues, but Granite Rock is a 301 FAA case in which this Court said that was arbitrable. And, again, that's sort of our point here. Is that a – did the Supreme Court grant cert in that? They granted cert. It's been briefed. My name was on the brief for the union. It's being argued on January 19th. It's being argued. It's being argued on January 19th. But I don't – no one's challenging that. Do you get to argue it? No. To my regret. But, anyway, no one's challenged the arbitrability issue. It's a different issue here. Okay. So it doesn't really directly answer our question here. No. Okay. It does not. But there is an earlier Granite Rock case that is more relevant, but that's why I asked which one. For those reasons, we ask that the decision be reversed and we be remanded to arbitration. Thank you. Thank you. The case just argued is submitted for decision. That concludes the Court's calendar for this morning, and the Court stands adjourned.
judges: Lynn, Schroeder, Callahan